FILED
CHARLOTTE, NC

AUG 21 2012

US DISTRICT COURT
WESTERN DISTRICT OF NC

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>)<br>v.       )<br>)<br>)<br>CHARLOTTE ELIZABETH GARNES  )<br>a.k.a. Charlotte Garnes Carter   )<br>) | DOCKET NO. 3:12CR249 - W<br><br>BILL OF INDICTMENT<br>Violations:<br><br>18 U.S.C. § 1347<br>18 U.S.C. § 1349<br>18 U.S.C. § 1512(c)(2) |

THE GRAND JURY CHARGES:

At the specified times and at all relevant times:

**Relevant Individuals and Entities**

1. From in or about 2009 to in or about 2011, CHARLOTTE ELIZABETH GARNES, a.k.a. Charlotte Garnes Carter and others defrauded the North Carolina Medical Assistance Program (hereinafter "Medicaid") of at least $650,000 by seeking and receiving payment for services which GARNES represented she had performed when, in fact, she had not.

2. GARNES is a licensed professional counselor (LPC) accredited through the North Carolina Board of Licensed Professional Counselors and the owner of Charlotte's Insight, Inc., a company incorporated under the laws of North Carolina. Both GARNES and Charlotte's Insight were enrolled with the Medicaid program to provide mental and behavioral health services.

3. Co-conspirator Teresa Marible held herself out as a provisionally-licensed provider of behavioral health and mental health services. Marible, however, was not licensed (provisionally or otherwise) to provide mental and behavioral health services.

1

4. Similarly, co-conspirator Michele Jackson (a.k.a. Sylvia Jackson) held herself out as a provider of behavioral health and mental health services. Jackson, however, was not licensed (provisionally or otherwise) to provide mental and behavioral health services.

5. North Carolina Medicaid is a state-administered program aided by federal funds and is a "health care benefit program," as defined in Title 18, United States Code, Section 24(b).

    a. Medicaid is designed to provide medical assistance for certain low income individuals and families. Covered services include mental and behavioral health services.

    b. The Division of Medical Assistance, North Carolina Department of Health and Human Services (herein referred to as "DMA"), administers the Medicaid Program and oversees mental health providers throughout the state who receive payments from Medicaid.

    c. In the Medicaid Program, a "provider" is defined as any individual or entity furnishing Medicaid services under a provider agreement with the Medicaid Agency. Every provider who participates in the Medicaid Program must apply for and be assigned a unique number by DMA. These provider numbers can be used to identify claims filed by and monies paid to a certain provider.

    d. In addition to assigning provider numbers, Medicaid also assigns recipient identification numbers. Each Medicaid patient (identified herein as "recipient") is assigned a unique identification number by the Medicaid Program. Each recipient can be identified by reference to his or her unique identification number.

## Schemes to Defraud

6. GARNES, Marible, Jackson and others engaged in a scheme to defraud Medicaid by seeking and obtaining payment from Medicaid for claims which were false and fraudulent in one or more of the following respects:

    a. the claims falsely and fraudulently represented GARNES to be the attending clinician for mental and behavioral health services, when, in fact, GARNES did not provide the services;

    b. the claimed services, if provided at all, were provided by unlicensed individuals who were not approved by Medicaid to provide such services; and

    c. the claimed services were not provided.

7. In or about 2009, GARNES entered agreements with Marible and Jackson whereby GARNES agreed to use her company's (Charlotte's Insight's) Medicaid provider number to submit claims for reimbursement to Medicaid for mental and behavioral services which Marible and Jackson allegedly provided.

8. Neither Marible nor Jackson could legitimately seek reimbursement from Medicaid for their alleged services because they were not licensed and were not Medicaid-approved providers. GARNES, therefore, falsely listed herself as the attending clinician on these claims submitted through Charlotte's Insight, even though she played no role in providing the services billed to Medicaid.

9. In exchange for the use of (*i.e.* renting out) her Medicaid provider number, GARNES retained a percentage of the Medicaid reimbursement and dispersed the remainder of the money to Marible and Jackson.

10. In some instances, GARNES was not in the United States when she represented that she had provided mental and behavioral health services to Medicaid beneficiaries. During the scheme to defraud, GARNES was a contract employee with a defense contractor which required her presence at military facilities, including facilities in Germany, for extended periods of time. GARNES, nevertheless, submitted false claims to Medicaid for reimbursement claiming that she had provided behavioral health services to Medicaid beneficiaries while she actually was out of the country pursuant to other employment.

11. In addition to falsely representing the identity of the attending clinician, many of the services GARNES, Jackson and Marible billed to Medicaid were never provided to beneficiaries. Jackson never provided any services to Medicaid recipients and merely fabricated all the claims information which GARNES then submitted to Medicaid. Similarly, Marible did not provide many of the services which GARNES submitted to Medicaid. For example:

   a. Juvenile Medicaid beneficiary A. J. has never received any mental or behavioral health services. GARNES, nevertheless, submitted and caused to be submitted false and fraudulent claims for mental and behavioral health services purportedly provided to A. J. on 22 separate dates of service from in or about October 2010 to in or about March 2011, resulting in approximately $2,344 in payments from Medicaid. Furthermore, GARNES was working in Germany for a defense contractor during some of the dates on which she falsely claimed to have provided services to A. J.

   b. Juvenile Medicaid beneficiary J. C. did not receive any mental or behavioral health services prior to October 2011. GARNES, nevertheless, submitted and caused to be submitted false and fraudulent claims for mental and behavioral

4

health services purportedly provided to J. C. on 27 separate dates of service from in or about July 2010 to in or about October 2010, resulting in approximately $2,289 in payments from Medicaid.

c. Juvenile Medicaid beneficiaries A. M., J. M. and M. M. are siblings and have never received behavioral or mental health services. GARNES, nevertheless, submitted and caused to be submitted false and fraudulent claims for mental and behavioral health services purportedly provided to:

　　i. A. M. on 35 separate dates of service from in or about July 2010 to in or about October 2010, resulting in approximately $3,174 in payments from Medicaid.

　　ii. J. M. on 29 separate dates of service from in or about July 2010 to in or about October 2010, resulting in approximately $2,470 in payments from Medicaid.

　　iii. M. M. on 32 separate dates of service from in or about July 2010 to in or about October 2010, resulting in approximately $2,651 in payments from Medicaid.

d. Juvenile Medicaid beneficiaries K.K.P., K.D.P. and K.M. are siblings and have never received behavioral or mental health services. GARNES, nevertheless, submitted and caused to be submitted false and fraudulent claims for mental and behavioral health services purportedly provided to:

　　i. K.K.P. on five separate dates of service from in or about July 2009 to in or about August 2009, resulting in approximately $616 in payments from Medicaid.

ii. K. D. P. on five separate dates of service from in or about July 2009 to in or about August 2009, resulting in approximately $616 in payments from Medicaid.

iii. K.M. on five separate dates of service from in or about July 2009 to in or about September 2009, resulting in approximately $616 in payments from Medicaid.

e. Adult Medicaid beneficiary A.F. has never received any mental or behavioral health services. GARNES, nevertheless, submitted and caused to be submitted false and fraudulent claims for mental and behavioral health services purportedly provided to A.F. on 11 separate dates of service from in or about July 2010 to in or about August 2010, resulting in approximately $963 in payments from Medicaid.

12. Additionally, during the scheme to defraud, GARNES frequently submitted claims to Medicaid representing that she had provided in excess of 24 hours of individual mental and behavioral health services in a single day. In one instance, GARNES represented that she had provided approximately 69 hours of individual mental and behavioral health services on a single day in December 2009.

13. When confronted by state and federal investigators on or about February 8, 2011, about her suspicious billing, GARNES lied in an effort to cover up her wrongdoing and to continue the scheme to defraud. Specifically:

a. when asked about Marible, GARNES falsely stated that she sent quarterly updates to the North Carolina Board of Licensed Professional Counselors detailing the

6

number of hours Marible worked under GARNES's supervision, when in fact, GARNES did not send such updates to the Board.

b. when asked whether she had billed any other provider's services through her Medicaid provider number besides Marible, GARNES falsely stated she had not, when in fact, GARNES had submitted claims through her Medicaid provider number for services allegedly provided by Jackson.

# COUNT ONE
## 18 U.S.C. § 1349
### (Health Care Fraud Conspiracy)

14. The Grand Jury re-alleges and incorporates by reference herein all of the allegations contained in paragraphs 1 through 13 of the Bill of Indictment, and further alleges that:

15. From in or about 2009 through in or about 2011, in Mecklenburg and Gaston Counties, within the Western District of North Carolina, and elsewhere, the defendant,

CHARLOTTE ELIZABETH GARNES
a.k.a. Charlotte Garnes Carter

knowingly conspired, confederated and agreed with Teresa Marible, Michele Jackson (a.k.a. Sylvia Jackson) and others known and unknown to the Grand Jury to knowingly and willfully execute a scheme and artifice to defraud a health care benefit program and to obtain, by means of false and fraudulent pretenses, representations, and promises, any of the money and property owned by and under the custody and control of any health care benefit program, in connection with the delivery of and payment for health care benefits, items, and services, in violation of Title 18, United States Code, Section 1347.

All in violation of Title 18, United States Code, Section 1349.

## COUNT TWO
## 18 U.S.C. § 1512(c)(2)
## (Obstruction of Official Proceeding)

17. The Grand Jury re-alleges and incorporates by reference herein all of the allegations contained in paragraphs 1 through 13 of the Bill of Indictment, and further alleges that:

18. On or about February 8, 2011, within the Western District of North Carolina and elsewhere, the defendant,

### CHARLOTTE ELIZABETH GARNES
a.k.a. Charlotte Garnes Carter

did corruptly obstruct, influence, and impede, and attempt to obstruct, influence and impede, an official proceeding, to wit, the proceeding of the Federal Grand Jury sitting in the Western District of North Carolina.

All in violation of Title 18, United States Code, Section 1512(c)(2).

9

## NOTICE OF FORFEITURE AND FINDING OF PROBABLE CAUSE

Notice is hereby given of the provisions of 18 U.S.C. § 982 and 28 U.S.C. § 2461(c). Under section 2461(c), criminal forfeiture is applicable to any offenses for which forfeiture is authorized by any other statute, including but not limited to 18 U.S.C. § 981 and all specified unlawful activities listed or referenced in 18 U.S.C. § 1956(c)(7), which are incorporated as to proceeds by section 981(a)(1)(C). The following property is subject to forfeiture in accordance with Section 982 and/or 2461(c):

a. All property which constitutes or is derived from proceeds of the violations set forth in this bill of indictment; and

b. If, as set forth in 21 U.S.C. § 853(p), any property described in (a) cannot be located upon the exercise of due diligence, has been transferred or sold to, or deposited with, a third party, has been placed beyond the jurisdiction of the court, has been substantially diminished in value, or has been commingled with other property which cannot be divided without difficulty, all other property of the defendant/s to the extent of the value of the property described in (a)

The Grand Jury finds probable cause to believe that the following property is subject to forfeiture on one or more of the grounds stated above:

a. A forfeiture money judgment in the amount of at least $664,247, such amount constituting the proceeds of the violations set forth in this bill of indictment.

A TRUE BILL

ANNE TOMPKINS
UNITED STATES ATTORNEY

*/s/ Kelli H. Ferry*
KELLI H. FERRY
ASSISTANT UNITED STATES ATTORNEY